MELINDA M. MORTON (SBN 209373)
mindy.morton@procopio.com
PROCOPIO, CORY, HARGREAVES & SAVITCH LLP
1117 S California Ave, Suite 200
Palo Alto, CA 94304
Telephone: 650.645.9020
Facsimile: 650.687.8320

GREGORY F. CORBETT (Mass. B.B.O. No. 646394)
*Pro Hac Vice* to be submitted
gcorbett@wolfgreenfield.com
BRYAN S. CONLEY
Pro Hac Vice to be submitted (Mass. B.B.O. No. 666830)
bconley@wolfgreenfield.com
ELIZABETH A. DIMARCO (Mass. B.B.O. No. 681921)
*Pro Hac Vice* to be submitted
edimarco@wolfgreenfield.com
KEVIN R. MOSIER (Mass. B.B.O. No. 703739)
Pro Hac Vice to be submitted
kmosier@wolfgreenfield.com
WOLF, GREENFIELD & SACKS, P.C
600 Atlantic Avenue, Boston, MA 02210
Tel: (617) 646-8000 Fax: (617) 646-8646

Attorneys for Plaintiff
AMPHENOL CORPORATION

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AMPHENOL CORPORATION**,**<br><br>Plaintiff,<br><br>v.<br><br>LUXSHARE-ICT and LUXSHARE PRECISION INDUSTRY CO. LTD.,<br><br>Defendants. | Case No.: 3:20-cv-06785<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Amphenol Corporation ("Amphenol") for its complaint against Defendants Luxshare-ICT, Inc. ("Luxshare-ICT") and Luxshare Precision Industry Co. Ltd. ("Luxshare Precision") (collectively, "Luxshare" or "Defendants"), hereby demands a jury trial and alleges as follows:

## NATURE OF ACTION

1. This is an action for patent infringement of United States Patent No. 7,371,117 (the "'117 Patent") and United States Patent No. 10,381,767 (the "'767 Patent") (collectively, the "Patents-in-Suit"), arising under the patent laws of the United States of America, Title 35 of the United States Code, and seeking damages and other relief under 35 U.S.C. § 271, *et seq*.

## INTRODUCTION

2. Amphenol is a technology leader in high speed, high density interconnect devices. Its interconnect products enable our modern economy, which is built on electronic communication, to run effectively. Even the most powerful server is useless without network connections that can reliably pass billions of bits of data in thousands of streams every second. Amphenol's interconnect products enable those connections.

3. Since its founding in Chicago in 1932, Amphenol has grown to be one of the world's largest designers and manufacturers of interconnect products. Amphenol products are used in virtually every end-market, including automotive, broadband communications, commercial aerospace, industrial, information technology and data communications, military, mobile devices, and mobile networks.

4. Amphenol's AICC Group ("AICC") sells interconnect products that are key components of electronic devices that form the foundation of modern communication, including servers, switches, routers, and base stations that provide broadband internet and 5G cellular communication. AICC's growth into this market-leading position is the direct result of its annual investments of multiple millions of dollars in research and development to overcome the engineering challenges of passing more electronic signals, of ever higher frequencies, through the often tortuous path between these electronic devices and a network. It has cultivated engineering

centers in Nashua, NH and Valley Green, PA with state-of-the-art signal integrity laboratories and computer modeling capabilities that enable Amphenol to continuously push the technological limits of both speed and density of interconnects.

5. The results of this research are embodied by the Patents-in-Suit and demonstrated by a long history of industry firsts and other accolades. For example, nearly 40 years ago, AICC's TCS business unit ("Amphenol TCS") pioneered the industry's first modular high density connector (HD+®). In the 1990s, Amphenol TCS launched the industry's first commercially successfully connector optimized for high speed differential applications at speeds greater than 5.0 Gb/s (VHDM-HSD™). In the 2000s, Amphenol TCS announced a breakthrough in interconnect performance with the introduction of its XCede® connector platform. The XCede® connector platform is designed to support 20+ Gbps requirements. In recognition of its commitment to innovation and technology advancements, Amphenol TCS has received numerous industry awards and praise. For example, Amphenol's XCede® connector platform was awarded Product of the Year by Electronic Products Magazine in 2007, and was named DesignVision Award winner in the Interconnect and Component Technology category from the International Engineering Consortium (IEC) for innovative products and services that support the work of electronic design engineers in 2008.

6. Among AICC's products are high speed I/O ("HSIO") connectors. Amphenol's patented innovations enhance the performance of HSIO connectors from AICC's HSIO business unit. Many HSIO connectors have interfaces based on Small Form-factor Pluggable ("SFP") standards, with variations to carry more signals in the same space, such as Quad Small Form-Factor Pluggable ("QSFP") or Quad Small Form-Factor Pluggable Double Density ("QSFP-DD"). Connectors according to the SFP standards may be implemented in a variety of configurations (e.g., 1x1, 1x2, 2x1, 2x2, etc.).

7. While the outward interfaces for these connectors are standardized, the internal design—which drives performance—is not. Amphenol has used its advanced technology to support a range of operating speeds to support current and future demands. Amphenol's Ultraport® product line includes connectors designed to pass data at up to 28 GBps/channel,

while connectors in its Expressport™ product line are designed for lower speeds and connectors in its Extremeport™ product line are designed for higher frequencies.

8. Luxshare Precision, headquartered in Dongguan, China, was founded in 2004, and is a relative newcomer to the HSIO connector market. Luxshare-ICT is headquartered in Milpitas, CA and operates as Luxshare Precision's North American office. *See* Ex. 3. Rather than expend the necessary resources in research and development, Luxshare has opted instead to copy Amphenol's patented technology and designs. Luxshare now sells HSIO connectors that infringe the Patents-in-Suit. Connector footprint drawings that serve as instructions to customers on how to attach Luxshare's connectors to a printed circuit board are available to download on Luxshare's website. *See* Ex. 4.[1] As illustrated in the comparison below, the Luxshare connector footprint drawings reveal that Luxshare has so exactly copied Amphenol's designs that Luxshare's connector footprint replicates Amphenol's connector footprint with a precision of a fraction of a millimeter.

//

//

//

[1] Although the drawing is labeled as the "property of Luxshare," it was publicly available for download by selecting the "drawing" button shown on page one of Exhibit 4.



9. Luxshare offers and sells HSIO connectors that infringe the Patents-in-Suit (the "Accused Products"). The Accused Products include, for example, Luxshare's QSFP and QSFP-DD connectors. Two examples of Luxshare's QSFP connectors are the Super QSFP connector and the Ultra QSFP connector, which are described in the product brochure excerpted below and attached as Exhibit 5 to this complaint.

//

//

//

*See* Ex. 5.

10. Further, the Accused Products are available in several different configurations. *See* Ex. 5; *see also* Ex. 4. For example, the Accused Products may be configured with a single port (1x1), multiple ports in a single row (1xN), two stacked ports (2x1), or multiple stacked ports (2xN). Exhibit 6 contains photographs of an exemplary Accused Product having two stacked ports (2x1). The Accused Product may also be configured to accommodate different data speeds, such as, 28G, 56G, 100G, and 200G.[2] On information and belief, the Accused Products having any of the foregoing configurations infringe one or more claims of the Patents-in-Suit.

11. On information and belief, from January 28 through January 30, 2020, Luxshare hosted an exhibitor booth at the DesignCon trade show in Santa Clara, California, where Luxshare employees displayed, marketed, and offered the Accused Products for sale in California and elsewhere in the United States. Exhibit 7 is a copy of the DesignCon 2020 Floor Plan, which shows Luxshare occupied booth number 717. Further, the Floor Plan shows that Luxshare's booth was located near Amphenol's booth.

12. Luxshare and Amphenol are competitors. By infringing the technology claimed by the Patents-in-Suit and replicating Amphenol's footprint design for mounting connectors to a

---

[2] The 100G models are given the prefix "S" meaning "Super" (for example, "S-QSFP"). The 200G models are given the prefix "U" meaning "Ultra" (for example, "U-QSFP").

customer's printed circuit board, Luxshare has circumvented the need to invest in the expensive research and development that would be required to develop its own high speed connector technology.

13. On information and belief, Luxshare has attempted to misappropriate Amphenol's existing customers by offering Luxshare's infringing copycat HSIO connectors.

**THE PARTIES**

14. Amphenol is a corporation duly organized and existing under the laws of the state of Delaware, having its principal place of business located at 358 Hall Avenue, Wallingford, Connecticut 06492.

15. On information and belief, Luxshare-ICT is a California corporation with its principal place of business located at 890 Hillview Court, Suite 200, Milpitas, California 95035. Luxshare-ICT is located within the Northern District of California and does business within this District, including marketing, selling, and/or offering to sell high speed connectors in the United States and in California that infringe the Patents-in-Suit. On information and belief, Luxshare-ICT is a corporate subsidiary of Luxshare Precision.

16. On information and belief, Luxshare Precision is a corporation organized and existing under the laws of China with its principal place of business located at No. 17 Kuiqing Road, Qinghuang Industrial Zone, Qingxi Town, Dongguan City 523650, China. On information and belief, Luxshare Precision is the corporate parent of Luxshare-ICT. On information and belief, Luxshare Precision manufactures the Accused Products in China. Further, on information and belief, Luxshare Precision exercises control over Luxshare-ICT and/or acts through Luxshare-ICT to market, sell, and/or offer to sell the Accused Products in the United States. For example, Luxshare Precision presents Luxshare-ICT as its North American Office. *See* Ex. 3.

**JURISDICTION AND VENUE**

17. This action for patent infringement arises under the Patent Laws of the United States of America, 35 U.S.C. § 100 *et seq*. This Court has federal question subject matter jurisdiction over the matters pleaded herein under 28 U.S.C. §§ 1331 and 1338(a).

18. This Court has personal jurisdiction over Luxshare-ICT because, *inter alia*, Luxshare-ICT is a California corporation having its principal place of business located within this district. Further, on information and belief, Luxshare-ICT regularly and continuously transacts business within the State of California and this judicial district, including committing acts of infringement by making, using, importing, offering to sell, and selling products for use by California citizens that infringe the Patents-in-Suit. Further, on information and belief, Luxshare-ICT attended DesignCon in Santa Clara, California from January 28-30, 2020 and marketed and offered to sell products that infringe the Patents-in-Suit.

19. This Court has personal jurisdiction over Luxshare Precision because, on information and belief, Luxshare Precision regularly and continuously transacts business within the State of California and this judicial district either directly or through the actions of Luxshare-ICT as its agent and/or alter-ego, including committing acts of infringement by making, using, importing, offering to sell, and selling products for use by California citizens that infringe the Patents-in-Suit.

20. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and 1400(b) because: Luxshare-ICT resides in this District, both defendants have committed acts of infringement in this District, and both defendants maintain and/or are responsible for a regular and established place of business in this District. For instance, Luxshare-ICT has its principal place of business located at 890 Hillview Court, Suite 200, Milpitas, California 95035, and Luxshare-ICT operates on Luxshare Precision's behalf.

21. With respect to Luxshare Precision, venue is also proper under 28 U.S.C. §§ 1391(b) and (c), and 1400(b) because as a foreign corporation, it may be sued in any judicial district that has personal jurisdiction over it, including this judicial district as set forth above.

**<u>INTRADISTRICT ASSIGNMENT</u>**

22. Pursuant to Civil L.R. 3-2(c), this action is an Intellectual Property Rights case and should be assigned on a district-wide basis.

**LUXSHARE'S INFRINGEMENT**

**A.     Amphenol's Asserted Patents**

23.     On May 13, 2008, the United States Patent and Trademark Office duly and legally issued the '117 Patent, entitled "High Speed, High Density Electrical Connector."  Amphenol owns all right, title, and interest in the '117 Patent, including all rights of recovery.  A true and accurate copy of the '117 Patent is attached as Exhibit 1.

24.     The '117 Patent is valid and enforceable.

25.     Luxshare has actual knowledge of the '117 Patent at least as of the filing of this action.

26.     On August 13, 2019, the United States Patent and Trademark Office duly and legally issued the '767 Patent, entitled "High Performance Cable Connector."  Amphenol owns all right, title, and interest in the '767 Patent, including all rights of recovery.  A true and accurate copy of the '767 Patent is attached as Exhibit 2.

27.     The '767 Patent is valid and enforceable.

28.     On May 18, 2016, Luxshare executed a license with Amphenol regarding products not at issue in this litigation.  That agreement included an attachment that listed United States patent application number 15/065,683, which is the patent application underlying the '767 patent.  Therefore, Luxshare had actual knowledge of the application underlying the '767 patent at least as of May 18, 2016.  Luxshare has known, should have known, or has had willful ignorance of the '767 patent as of its issuance on August 13, 2019.

29.     Further, Luxshare has actual knowledge of the '767 Patent at least as of the filing of this action.

**B.     Luxshare's Infringing Products**

30.     Luxshare uses the Accused Products in the United States, sells the Accused Products in the United States, offers the Accused Products for sale in the United States, and/or imports the Accused Products into the United States.  Exhibit 8 is a copy of a webpage from Luxshare's website showing its United States and global presence.

R&D Office Factory

*See* Ex. 8.

31. Further, on information and belief, Luxshare manufactures the Accused Products in China and supplies the Accused Products to third parties with knowledge that the Accused Products will be incorporated into servers, routers, switches, and other telecommunications hardware, which will be imported, sold, offered for sale, and/or used in California and elsewhere in the United States. *See* Ex. 4 (describing applications).

**COUNT I**

**(Luxshare's Infringement of the '117 Patent)**

32. Plaintiff hereby repeats and re-alleges the preceding paragraphs as if set forth specifically herein.

33. Luxshare has directly infringed one or more claims of the '117 Patent in violation of 35 U.S.C. § 271(a), by having made, used, offered for sale, sold, and/or imported in this District and elsewhere in the United States the Accused Products. Further, on information and belief, Luxshare continues to directly infringe one or more claims of the '117 Patent.

34. The '117 Patent relates to an electrical connector with electrically lossy materials bridging ground members. For example, claim 9 of the '117 Patent states:

> 9. An electrical connector comprising a plurality of regions, each region having:
>
> insulative material;
>
> a plurality of signal conductors, each signal conductor having a contact tail and a contact portion and an intermediate portion there between, and at least a part of the intermediate portion of each of the plurality of signal conductors secured in the insulative material;
>
> a plurality of conductive elements not in contact with any one of the plurality of signal conductors, each conductive element having an intermediate portion; and
>
> electrically lossy material extending between and in contact with the intermediate portion of each of the plurality of conductive elements, wherein the plurality of signal conductors are not electrically connected with the electrically lossy material.

35. Luxshare has directly infringed and, on information and belief, continues to directly infringe at least claim 9 of the ’117 Patent either literally or under the doctrine of equivalents. The Accused Products satisfy each and every limitation recited in claim 9 of the ’117 Patent.

36. On information and belief, Luxshare has actively and knowingly sold, and continues to actively and knowingly sell, the Accused Products to third parties outside the United States with the knowledge and intent that the Accused Products will be imported, sold, offered for sale, and/or used in California and elsewhere in the United States. At least as of the date this complaint is filed, Luxshare does so with knowledge that the Accused Products infringe one or more claims of the ’117 Patent.

37. On information and belief, Luxshare has actively and knowingly induced, and continues to actively and knowingly induce, infringement of at least claim 9 of the ’117 Patent in violation of 35 U.S.C. § 271(b).

38. Luxshare’s acts of infringement are and have been without Amphenol’s permission, consent, authorization, or license. Luxshare’s acts of infringement have caused and continue to cause damage to Amphenol. Amphenol is entitled to recover from Luxshare the damages sustained by Amphenol as a result of Luxshare’s wrongful acts, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

39. Luxshare's direct and induced infringement of the '117 Patent is and has been willful since infringement began. At minimum, Luxshare's infringement of the '117 patent is willful as of the date this complaint is filed.

**COUNT II**

(**Luxshare's Infringement of the '767 Patent**)

40. Plaintiff hereby repeats and re-alleges the preceding paragraphs as if set forth specifically herein.

41. The '767 Patent relates to an electrical connector having lead assemblies and conductive members embedded within a housing. For example, claim 1 of the '767 Patent states:

> 1. A receptacle adapted for mounting to a printed circuit board, comprising:
>
> a housing having a cavity bounded by a first surface that is parallel to the printed circuit board and an opposing second surface that is parallel to the printed circuit board, each of the first and second surfaces being disposed above a first side of the printed circuit board;
>
> a first lead assembly including:
>
> > a first monolithic housing member; and
> >
> > a first plurality of conductive elements each comprising a contact tail adapted for attachment to the printed circuit board that is perpendicular to the first side of the printed circuit board, a mating contact portion disposed along the first surface of the cavity, and an intermediate portion disposed in the first monolithic housing member and coupling the contact tail to the mating contact portion,
> >
> > wherein the first monolithic housing member comprises exterior projections extending away from the first plurality of conductive elements along a direction parallel to the first surface; and
>
> a second lead assembly including:
>
> > a second monolithic housing member; and
> >
> > a second plurality of conductive elements each comprising a contact tail adapted for attachment to the printed circuit board that is perpendicular to the first side of the printed circuit board, a mating contact portion disposed along the second surface of the cavity, and an intermediate portion disposed in the second monolithic housing member coupling the contact tail to the mating contact portion,
> >
> > wherein the second monolithic housing member comprises exterior projections extending away from the second plurality of conductive elements along the direction parallel to the first surface.

42. Luxshare has directly infringed one or more claims of the ’767 Patent in violation of 35 U.S.C. § 271(a), by having made, used, offered for sale, sold, and/or imported in this District and elsewhere in the United States the Accused Products. Further, on information and belief, Luxshare continues to directly infringe one or more claims of the ’767 Patent.

43. Luxshare has directly infringed and, on information and belief, continues to directly infringe at least claim 1 of the ’767 Patent either literally or under the doctrine of equivalents. The Accused Products satisfy each and every limitation recited in claim 1 of the ’767 Patent.

44. On information and belief, Luxshare has actively and knowingly sold, and continues to actively and knowingly sell, the Accused Products to third parties outside the United States with the knowledge and intent that the Accused Products will be imported, sold, offered for sale, and/or used in California and elsewhere in the United States. On information and belief, at least as of the date the ’767 patent issued (August 13, 2019), Luxshare has done so with knowledge that the Accused Products infringe one or more claims of the ’767 Patent. Further, at least as of the date this complaint is filed, Luxshare is doing so with knowledge that the Accused Products infringe one or more claims of the ’767 Patent.

45. On information and belief, since August 13, 2019, Luxshare has actively and knowingly induced, and continues to actively and knowingly induce, infringement of at least claim 1 of the ’767 Patent in violation of 35 U.S.C. § 271(b).

46. Further, at least since the filing of this complaint, Luxshare has actively and knowingly induced infringement of at least claim 1 of the ’767 Patent in violation of 35 U.S.C. § 271(b).

47. Luxshare’s acts of infringement are and have been without Amphenol’s permission, consent, authorization, or license. Luxshare’s acts of infringement have caused and continue to cause damage to Amphenol. Amphenol is entitled to recover from Luxshare the damages sustained by Amphenol as a result of Luxshare’s wrongful acts, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

48. Luxshare's direct and induced infringement of the '767 patent is and has been willful since August 13, 2019. At minimum, Luxshare's infringement of the '767 patent is willful as of the date this complaint is filed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

A. That Defendants have infringed one or more claims of each of the Patents-in-Suit;

B. That Defendants' infringement was willful;

C. That Defendants and their respective officers, agents, servants, employees, dealers, retailers, distributors, manufacturers, attorneys, and all others in active concert and/or participation with them be permanently enjoined from infringing the Patents-in-Suit through the use, importation, offer for sale, and/or sale of infringing products and/or any of the other acts prohibited by 35 U.S.C. § 271;

D. Damages in an amount to be proven at trial;

E. That Amphenol's damages award be increased by up to three times the amount of damages assessed pursuant to 35 U.S.C. § 284;

F. That this case be found exceptional under 35 U.S.C. § 285 and Amphenol be awarded its attorneys' fees;

G. That Amphenol be granted pre-judgment and post-judgment interest on the damages caused by Luxshare's infringing activities and other conduct complained of herein; and

//

//

//

H. That Amphenol be awarded such other and further relief as the Court may deem just and proper under the circumstances.

DATED: September 29, 2020

PROCOPIO, CORY, HARGREAVES & SAVITCH LLP

By: */s/ Melinda M. Morton*

MELINDA M. MORTON
PROCOPIO, CORY, HARGREAVES & SAVITCH LLP
1117 S. California Ave, Suite 200
Palo Alto, CA 94304
Telephone: 650.645.9000
Facsimile: 619.235.0398

GREGORY F. CORBETT
*(pro hac vice forthcoming)*
BRYAN S. CONLEY
*(pro hac vice forthcoming)*
ELIZABETH A. DIMARCO
*(pro hac vice forthcoming)*
KEVIN R. MOSIER
*(pro hac vice forthcoming)*
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue, Boston, MA 02210
Tel: (617) 646-8000 Fax: (617) 646-8646

Attorneys for Plaintiff
AMPHENOL CORPORATION

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Amphenol hereby requests a jury trial on all issues triable by a jury.

DATED: September 29, 2020

PROCOPIO, CORY, HARGREAVES & SAVITCH LLP

By: */s/ Melinda M. Morton*

MELINDA M. MORTON
PROCOPIO, CORY, HARGREAVES & SAVITCH LLP
1117 S. California Ave, Suite 200
Palo Alto, CA 94304
Telephone: 650.645.9000
Facsimile: 619.235.0398

GREGORY F. CORBETT
(*pro hac vice forthcoming)*
BRYAN S. CONLEY
(*pro hac vice forthcoming)*
ELIZABETH A. DIMARCO
(*pro hac vice forthcoming)*
KEVIN R. MOSIER
(*pro hac vice forthcoming)*
WOLF, GREENFIELD & SACKS, P.C.
600 Atlantic Avenue, Boston, MA 02210
Tel: (617) 646-8000 Fax: (617) 646-8646

Attorneys for Plaintiff
AMPHENOL CORPORATION